### 16337. FLORENCE *v.* COMMERCIAL BANK *et al.*

1. Knowledge of the consideration of a negotiable note, by a bona fide purchaser for value before maturity, does not carry with it any notice of failure of consideration, nor is the purchaser bound to make inquiry as to whether the consideration has failed or will fail.
2. The verdict for the plaintiffs being demanded, the court did not err in directing it, nor in thereafter refusing a new trial.

DECIDED SEPTEMBER 9, 1925.

Complaint; from city court of Athens—Judge Bradwell. February 28, 1925.

Suit was brought in the city court of Athens by the Peoples Bank, as holder, against W. T. Florence, R. L. Moss III, and John D. Moss, on a note executed by W. T. Florence to R. L. Moss III and indorsed by him and his father, John D. Moss.

After suit was filed the Peoples Bank became merged with the Commercial Bank under the name of Commercial Bank, and by proper amendment Commercial Bank was made plaintiff. The note was given by R. L. Moss III in connection with a purchase and sale of the assets of a certain business which he had owned and operated under the trade name of "Auto Supply Company," and recited that it was "given for accounts according to contract." The contract provided that R. L. Moss III guaranteed the correctness and collection of all the accounts upon his books. Before maturity and with notice, of course, of the above recital in the note, and also with notice of the provisions of the contract, the Peoples Bank purchased the note with the indorsements of R. L. Moss III and John

D. Moss thereon. The defendants filed a plea of partial failure of consideration, upon the ground that many of the accounts were uncollectible, and that the plaintiffs acquired the note with notice of such defense. Upon the trial of the case the court directed a verdict for the plaintiff. W. T. Florence made a motion for a new trial, which was overruled, and he excepted.

The defendants relied mainly upon the evidence of S. Bernstein, president of the Peoples Bank, who bought the note. He testified as follows: "The note sued on, I bought it for the Peoples Bank. I was president of the Peoples Bank at the time. When Mr. Moss offered to sell it to me I told him that I would have to have additional security; banks take all they can get. I saw this in the contract, where the accounts were guaranteed to be correct and collectible. As to whether that was the reason I wanted additional security, I don't know, but I saw it in there. I knew it was given for the contract. I knew there was a contract. I knew the note was given for the accounts; I saw that in the contract. The reason I wanted additional security, I didn't think that the young Moss was responsible for such a large amount, and I knew that Mr. Florence was good for any amount. I don't remember that the reason that I couldn't take it without additional security was because I saw it was for purchase-money of these accounts. I drew the note myself. I knew of the contract. I saw the guarantee of the collection of the accounts. I read it. That was one reason I wanted additional security, but I couldn't see anything wrong with the contract. I may have told him that if he would remove the statement 'this note is given for accounts according to contract', that I would take it without indorsers. . . Mr. R. L. Moss asked me if I would discount it with Mr. Florence on it, and I told him 'Yes;' after I read the contract I said, 'You must have your father on the note or I will not accept it.' I knew R. L. Moss didn't have much money. Mr. Moss had been doing business with my bank for several months; the Auto Supply Company had been for several months before that. I don't know how long Mr. Moss was in business there." Q. "What is the general collectibility of accounts of an auto supply company?" A. "Pretty bad; pretty weak. I knew nothing whatever of the character of the accounts of the Auto Supply Company."

In addition to the foregoing the defendants offered uncontradict-

ed testimony that after the bank acquired the note, efforts were made to collect the accounts, and that approximately half of them proved to be uncollectible.

*Thomas & Thomas, Horace & Frank Holden,* for plaintiff in error.

*Erwin, Erwin & Nix, T. S. Mell,* contra.

BELL, J. (After stating the foregoing facts.) The contention of the defendant (referring to Mr. Florence, the only one of the defendants who is complaining) is that under the foregoing facts it was for the jury to say whether or not the plaintiff took with "notice," and therefore subject to the defense which the defendant would have had against the payee. He insists, that, in view of the testimony of Mr. Bernstein, the jury could have found that the bank, at the time it bought the note, had knowledge of sufficient circumstances to put it upon its guard as to whether the notes were uncollectible. This contention finds its strongest support in the fact that Mr. Bernstein, in reply to the question, "What is the general collectibility of accounts of *an* auto supply company?," testified that they were "pretty bad, pretty weak." But since it further appeared, without dispute, that he "knew nothing whatever of the character of the accounts of *the* Auto Supply Company" (italics ours in both instances), we think that the evidence was insufficient to show that the bank took with notice that the consideration would fail. The mere fact that the accounts of others in similar lines of business were "pretty bad" or "pretty weak" would not indicate that the accounts of Mr. Moss were of the same character. There is nothing to show that he dealt with parties who were not good for their obligations, or that he himself was a person who would pad his accounts or make unjust charges. The fact that Moss may have been insolvent, and that the bank knew it, can not affect the matter; for if the accounts were uncollectible for any reason, the defense to the note would have been the same whether the payee was financially strong or insolvent. The breach of the guaranty as to the correctness and collectibility of the accounts would have been a mere failure of consideration, regardless of the payee's financial circumstances. Mere insolvency, of course, does not affect a man's character, and there was no presumption against the accounts on that score. The presumption was that the contract

of sale was made in good faith and that the accounts were as represented.

"Knowledge on the part of holder of a negotiable note that it was given in consideration of an executory contract or based upon an executory agreement with the payee, even though such consideration or agreement should be expressed in the instrument itself, will not deprive the indorsee of the character of a bona fide holder, unless he had notice of the breach of such agreement by the payee; and while the rule is that 'any circumstance which would place a prudent man upon his guard in purchasing negotiable paper shall be sufficient to constitute notice to a purchaser of such paper before it is due' (Civil Code (1910), § 4291), and while in a particular case the character and sufficiency of the circumstances which would place a prudent man on his guard are to be determined as questions of fact by the jury, and not by the judge as questions of law (*Fidelity & Deposit Co.* v. *Mays,* 142 *Ga.* 821, 83 S. E. 961; *Park* v. *Buxton,* 10 *Ga. App.* 356, 73 S. E. 557), still in the application of these rules, the question is not whether the circumstances were such as might reasonably put the indorsee upon notice that the consideration could fail, but whether they were sufficient to put him on notice it must fail or actually had failed." *Reece* v. *Citizens Bank of Roswell,* 22 *Ga. App.* 519 (1) (96 S. E. 452). "The fact that the consideration of a note is set forth on its face does not carry with it notice of the failure of consideration, if it has failed, to a person taking it bona fide; nor is he ipso facto put upon inquiry and bound to inquire whether the consideration has failed." *Bank of Commerce* v. *Barrett,* 38 *Ga.* 126 (95 Am. Dec. 384). "The fact that the consideration of a note is set out in its face does not carry with it any notice of a failure of consideration, if in fact it has failed; and one who buys the note bona fide, for value before maturity, is not bound to make inquiry whether there is a failure of consideration." *Simmons* v. *Council,* 5 *Ga. App.* 386 (63 S. E. 238). See also, in this connection, *Bank of Commerce* v. *Knowles,* 32 *Ga. App.* 800 (124 S. E. 910).

Under the evidence adduced, the indorsee was a holder without notice. The verdict for the plaintiff being demanded, the court did not err in directing it, nor in thereafter refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*